# EXHIBIT A

IN THE CIRCUIT COURT OF TENNESSEE FOR THE TWENTY FOURTH JUDICIAL DISTRICT AT SAVANNAH

KARA JORDAN, individually and on behalf of deceased spouse,
Jesse Jordan, F.U.B minor child, A.J. (D.O.B: 10/14/2011)

    Plaintiff,

vs.                                                     Civil Action No. 22-CV-26

                                                                  JURY DEMANDED

HYSTER-YALE GROUP, INC.
F/K/A NACCO MATERIALS HANDLING GROUP, INC.

    Defendant,

    and

BRIGGS INDUSTRIAL SOLUTIONS, INC.
F/K/A BRIGGS EQUIPMENT, INC.

    Defendant.

## COMPLAINT

    Comes now, Kara Jordan, individually and on behalf of her minor daughter, A.J. and on behalf of her deceased spouse, Jesse Jordan (collectively "Plaintiffs"), by and through their undesigned attorneys, George D. Norton, Jr. and Michael A. Katzman, and brings this Complaint for wrongful death against Defendants Hyster-Yale Group, Inc. f/k/a Nacco Materials Handling Group, Inc. and Briggs Industrial Solutions, Inc. f/k/a Briggs Equipment, Inc. (collectively "Defendants") and allege as follows:

1. Plaintiff, Kara Jordan, is a resident of McNairy County in the State of Tennessee residing at 1941 Charlie Pounds Road, Stantonville, Tennessee 38379, with her minor daughter A.J. who was born on October 14, 2011.

2. Plaintiff, Kara Jordan, is the surviving spouse of Jesse Jordan who died in a forklift accident

1

on July 29, 2021, in Counce, Tennessee while working at Packaging Corporation of American ("PCA") located in Hardin County, Tennessee.

3. Defendant Hyster-Yale Group, Inc. ("Hyster") formerly known as NACCO Materials Handling Group, Inc. is a Delaware Corporation with its principal place of business located at 5875 Landerbrook Drive, Suite 300, Mayfield Heights, OH 44124-4069, whose products are sold in Tennessee and intended to enter into the stream of commerce in Tennessee.

4. Defendant Hyster designed and manufactured the forklift/lift truck that is the subject of this litigation and is doing business in the State of Tennessee and can be served with process through Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

5. Defendant Briggs Industrial Solutions, Inc. ("Briggs") is Delaware Corporation formally known as Briggs Equipment, Inc., with its principal place of business at 10540 North Stemmons Freeway, Dallas, TX 75220-2425 and does business in the State of Tennessee and can be served with process through Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

6. Defendant Briggs sells, maintains, modifies, services, and leases Hyster-Yale forklifts/lift trucks, including the one that is the subject of this lawsuit, in the United States and its products, including the forklift/lift truck that caused the death of Jesse Jordan, entered into the stream of commerce in Tennessee at PCA in Counce, Tennessee.

7. Defendant Briggs leased and/or sold the forklift (also known as a lift truck) to PCA and was responsible for servicing and maintaining the forklift/lift truck.

8. Upon information and belief, the forklift in question was sold or leased to PCA by Briggs at their dealership in Tupelo, MS located at 2129 McCullough Boulevard, Tupelo, MS 38801.

9. This Court has jurisdiction over this action and the parties pursuant to inter alia, Tenn. Code

2

Ann. Section 16-10-101, and/or Tenn. Code Ann. Section 29-28-101, et. seq., Tenn. Code Ann. Section 20-5-106, et. seq., and Tenn. Code Ann. Section 20-4-101 et. seq.

10. Venue is proper in this Court pursuant to <u>inter alia</u>, Tenn. Code Ann. Section 20-4-101 because all of this cause of action arose in Hardin County, Tennessee and all of the Defendants do business in Tennessee including but not limited to marketing, distributing, promoting, manufacturing, leasing and selling forklifts and/or lift trucks, such as and including the one that caused Jesse Jordan's death.

11. On July 29, 2021, Jesse Jordan was employed at PCA and was using a H80FT forklift/lift truck that was designed and manufactured by Defendant Hyster and sold or leased and maintained by Defendant Briggs when it suddenly caused his death when one of its components fell on him.

12. Defendant Hyster is the manufacturer and seller of forklift/lift trucks and other heavy machinery in the United States, including the State of Tennessee, and did design, manufacture and sell the H80FT forklift/lift truck which is at issue in this lawsuit.

13. Defendant Briggs, sells, services, maintains, modifies, and leases forklifts/lift trucks including the one that is the subject of this lawsuit and places them in the stream of commerce. Briggs is doing business in the State of Tennessee and can be served with process through Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312.

14. Plaintiffs' cause of action arises in Tort out of personal injuries, wrongful death, and products liability and damages incurred as a result of a forklift/lift truck accident and a defective Hyster-Yale H80FT forklift/lift truck system, Tenn. Code. Ann. Section 29-28-101 et seq. Tenn. Code Ann. Section. 20-5-106 and Tenn. Code Ann. Section 20-4-101,

15. At all material times, Hyster-Yale Group, Inc., Hyster-Yale Materials Handling Inc., and/or

3

NACCO Materials Handling Group, Inc., were the designer, manufacturer, marketer, and/or seller of Hyster brand material handling equipment in the United States, including the Hyster H80FT forklift/lift truck that caused the death of Jesse Jordan.

16. At all material times, Defendant Briggs, was an authorized dealer for Hyster brand material handling equipment and sold and/or leased the Hyster-Yale H80FT forklift/lift truck system that caused the death of Jesse Jordan to PCA. Additionally, Defendant Briggs, maintained, serviced, and performed repairs on the Hyster-Yale H80FT forklift/lift truck system prior to this loss.

17. On July 29, 2021, Jesse Jordan was an employee at Packing Corporation of America in Counce, Tennessee and was operating the Hyster-Yale forklift/ lift truck with its Cascade Turnaload 50D ("Turnaload") bale handling attachment that is routinely used at the PCA Mill to unload, stack, and transport bundles of cardboard and/or paper destined for recycling or some other purpose.

18. These bundles of cardboard and/or paper are compacted into cubes and are wrapped with bailing wire.

19. When the forklift/ lift truck Turnaload equipment is used to handle bundles of cardboard and/or paper, bailing wire and cardboard debris routinely fall off of the bundles and become lodged, entangled and/or entrapped aboard the forklift/ lift truck and Turnaload attachment.

20. If allowed to continue to collect unabated, the cardboard and/or bailing wire will interfere with the operation of the equipment.

21. Lift truck operators, including Jesse Jordan, of this equipment routinely stop work during operations to clear the wire and/or cardboard debris that has collected on the equipment.

22. The act of pulling tangled bailing wire and/or cardboard from the Turnaload attachment and the forklift/ lift truck mast brings the operator into close proximity to the front of the machine.

23. Some forklift/ lift truck operators may use long steel crowbars to assist with the removal of debris. One such crowbar was found in close proximity to the incident site.

24. Operators may determine that it is necessary to stop and clear debris from the machine when the debris interferes with the normal operation of one or more powered functions such as traveling, mast elevation, and/or Turnaload grapple movement.

25. The design of the Cascade Turnaload 50D attachment, when mounted to the mast of the Hyster H80FT forklift/lift truck creates a pocket between the Turnaload backrest and the 1st stage mast lift cylinder.

26. Debris collects in this pocket. The backrest is part of the Turnaload device and the 1st stage mast lift cylinder is part of the Hyster lift truck.

27. At the top of the ram and/or rod of the 1st stage mast lift cylinder is a crosshead, having sheaves for both the outer mast lifting chains and the hydraulic hoses, for energizing the grapple and turning function mechanisms of the Turnaload attachment.

28. This crosshead supports the lift chains, the hydraulic hoses, the Turnaload attachment, the outer mast section, and the lifted load and/or cargo.

29. The rod of the 1st stage mast cylinder is hollow, like a pipe, and a vertical pin seats the crosshead atop the rod. The assembly of the crosshead and the cylinder rod relies exclusively on the downward force of gravity to remain connected.

30. During mast raising and lowering operations, the mast lift cylinder rod and its crosshead moves up and down relative to the "pocket" atop the Turnaload where debris is known to collect. The mast rod and the lifting chains form one side or wall of the pocket.

31. Certain manipulations of the controls on the forklift/ lift truck can cause the mast lift chains to go slack while setting a bale atop a stack of other bales. These same control manipulations can cause the "pocket" to move upward relative to the crosshead. When sufficient debris is caught in the pocket between the Turnaload and the rod of the 1st stage lift cylinder, this debris can entangle the crosshead and lift it from its seat atop the cylinder rod. If the crosshead pin is withdrawn from the 1st stage cylinder rod, the crosshead may fall over, allowing the outer mast and its Turnaload attachment to collapse to the floor.

32. The mast elevation at which the crosshead may become unseated causes the crosshead to be blocked from the view of the operator, both when in the cab and when on the ground. Items blocking the operator's view of the crosshead include the cab roof, the mast, and the body of the Turnaload.

33. Operators are accustomed to stopping work and cleaning debris from the forklift/ lift trucks when needed. An indicator that cleaning is required is the loss of proper function of the forklift/ lift truck. Operators are accustomed to working in close proximity to the elevated Turnaload attachment and the front of the forklift/ lift truck when removing tangled bailing wire from the mechanisms.

34. The pin connection and reliance on gravity to keep the crosshead atop the 1st stage cylinder rod works well in clean applications where nothing is present to snag the crosshead. In applications involving the handling of bails held together by steel wire, the crosshead should

6

be sufficiently fixed to the 1st stage cylinder rod so that debris may not dislodge the crosshead.

35. Defendant Briggs and Defendant Hyster failed to warn the forklift/ lift truck operator and user, including Jesse Jordan, that applications involving bailing wire might cause entanglement and separation of non-fixed linkage components of the lift truck.

36. Defendants failed to recognize that reliance on gravity to keep major components of the forklift/ lift truck assembled is not sound practice for applications in which bailing wire routinely becomes entangled in the machine.

37. On July 29, 2021, Jesse Jordan was operating a Hyster-Yale H80FT, and he attempted to remove debris from the forklift/ lift truck. Jesse Jordan was in close proximity to the elevated Turnaload attachment and the front of the lift truck when removing tangled bailing wire from the mechanisms and the Turnaload attachment suddenly and without warning pinned him to the ground, causing blunt force trauma and crushing injuries that ultimately led to the death of Jesse Jordan, due to no fault or action of his own.

38. Due to the design and/or manufacturing by Defendant Hyster of the forklift/lift truck and/or due to repairs and/or modifications performed on the forklift/ lift truck prior to July 29, 2021, by Defendant Briggs, this led to the sudden and unexpected collapsing of the Turnaload which ultimately killed Jesse Jordan.

39. When the Hyster-Yale H80FT forklift was placed in the stream of commerce, Hyster-Yale Group, Inc., Hyster-Yale Materials Handling, Inc., and/or NACCO Materials Handling Group, Inc., failed to exercise that degree of expertise reasonably expected of a manufacturer of forklift/lift truck and other material handler companies by:

7

    a. Failure to comply with express of implied warranties of fitness for use in industrial spaces;

    b. Failure to assure that the Hyster-Yale H80FT in question met the safety needs of the work environment for which it was supplied;

    c. Improper repair of the Hyster-Yale H80FT and improper maintenance of the Turnaload and mast head cylinder which caused the sudden and collapse of the forks/clamps;

    d. Failure to properly design and/or manufacture the Hyster-yale H80FT system and/or its components in relying upon gravity as the sole means of keeping the components in place and from collapsing to the ground and killing Jesse Jordan.

    e. Such further and other acts of negligence, fault, omission, or commission to be proven at the trial of this cause.

40. Plaintiffs allege that said Hyster-Yale H80FT was designed, manufactured, assembled and placed in the stream of commerce by Defendant Hyster. At the time of use and sale of said forklift/lift truck, its components were in a defective or unreasonably dangerous condition in design and/or manufacturing, rendering it unsafe for normal use. Said forklift/lift truck was negligently designed, manufactured, and/or assembled by Defendant in that said forklift/lift truck did not adequately protect its operator from the risk of enhanced injuries as a result of being in a close proximity to its clamps of the type which Jesse Jordan sustained in the accident at issue. Defendant Hyster-Yale and Briggs had actual knowledge that its machines would be required to be cleaned and debris be removed for proper functioning of the forklift/lift truck.

41. Defendant Hyster and Defendant Briggs, in the design, manufacture and sale of said system

8

failed to adequately test said Hyster-Yale H80FT, or substantially similar equipment, such that the aforesaid dangers and/or defective condition would have been known to said Defendant, or in the exercise of reasonable care, should have been known to said Defendant.

42. Defendant Hyster and Defendant Briggs were also negligent in that Defendants failed to adequately warn owners and operators of said equipment and/or issue proper instructions about the aforesaid dangers.

43. Plaintiffs further allege that the aforesaid dangers and/or defective condition in design and/or manufacture of said Hyster-Yale H80FT mast head system were known to Defendant Hyster and Briggs, in the exercise of reasonable care, or should have been known to Defendants, yet they failed to take adequate steps to eliminate and/or reduce the hazards of enhanced injuries or death as set forth above.

44. Defendant Hyster and Defendant Briggs owed a duty to all persons who may occupy a Hyster-Yale H80FT to prevent enhanced injuries by eliminating the faulty system, and that duty was breached.

45. Plaintiffs further allege that Defendant Hyster and Defendant Briggs in the manufacture and sale of said Hyster-Yale H80FT, breached its warranties, both express and implied, as stated in T.C.A. §47-2-313, §47-2-314 and §47-2-315, including its warranty of fitness for a particular purpose. Plaintiff alleges the decedent, Jesse Jordan, would not have suffered such severe deadly injuries had the Hyster-Yale H80FT been properly tested, and/or designed and/or manufactured to be safe for normal and anticipated use.

46. Defendant Hyster and Defendant Briggs breach of duty of care was the actual and proximate cause of Jesse Jordan's injuries that ultimately led to his death.

47. Defendant Hyster and Defendant Briggs had a conscious disregard for the safety of others

including Jesse Jordan by allowing the defective design of the Hyster-Yale H80FT and its components. Defendants' acts described within this Complaint were intentional, willful, wanton, insensitive, careless, reckless, and grossly negligent and their conduct gives rise to punitive damages; and Plaintiffs specifically requests the award of such punitive damages.

48. Plaintiffs have suffered and demand damages for, including but not limited to, mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs demand judgment against abovementioned Defendants for compensatory damages in the sum of Five-Million Dollars ($5,000,000.00) and ten million in punitive damages ($10,000,000.00), discretionary costs, pre and post judgment interest and any other relief that Plaintiffs are entitled and requests a jury to try this cause.

SUBMITTED BY:

_Michael Katzman w/ permission by George Norton_
Michael A. Katzman (TN BPR #028088)
Counsel for Plaintiffs
WAGERMAN KATZMAN
200 Jefferson Avenue, Suite 1313
Memphis, Tennessee 38103
(901) 527-0644

_[signature]_
George D. Norton, Jr. (TN BPR #028236)
Counsel for Plaintiffs
Norton Law Office, PLLC
590 Mulberry Avenue
Selmer, Tennessee 38375
(731) 646-3663